# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs October 1, 2013

## STATE OF TENNESSEE v. DEARAYSUN WRIGHT

**Direct Appeal from the Criminal Court for Shelby County**
**No. 11-00039     Paula L. Skahan, Judge**

---

**No. W2012-01769-CCA-R3-CD  - Filed December 10, 2013**

---

A Shelby County Criminal Court Jury convicted the appellant, Dearaysun Wright, of aggravated robbery, a Class B felony, and the trial court sentenced him to eight years in confinement.  On appeal, the appellant contends that the evidence is insufficient to support the conviction.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, PJ., and JERRY L. SMITH, J., joined.

Terita Hewlett Riley (on appeal) and Lisa Kutch (at trial), Memphis, Tennessee, for the appellant, Dearaysun Wright.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Melanie Headley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At trial, David Thames, the victim, testified that between 9:00 and 10:00 p.m. on September 30, 2010, he went to the First Tennessee Bank on Lamar Avenue between Knight Arnold Road and Getwell Road.  He parked his car and went into the bank to withdraw money from the automatic teller machine (ATM).  The victim had $370 in his wallet but needed additional money in order to pay his rent.  The ATM "declined" his transaction, so he walked back outside.  He said he heard something, looked to his left, and saw a man "right

there waiting on [him]." The man, who was about ten feet away, was wearing a hat and told him, "'I know you got it, drop it off.'" The man approached him, and the victim saw that the man was holding a revolver. The man got within one foot of the victim, reached into the victim's pockets, and found the victim's wallet. He took all of the money out of the victim's wallet, handed the wallet back to the victim, and walked toward Knight Arnold Road. The victim said that the robbery lasted about five minutes and that he was "scared, panicked, just hoping to make it out, see [his] little girl."

The victim testified that he immediately got into his vehicle, telephoned 911, and began following the robber. He said that the robber "tried to ditch over in a vacant parking lot" but reappeared moments later and that he gave a description of the robber to the dispatcher. The victim said that he observed the robber for ten to twenty minutes after the robbery, that a police officer pulled up, and that he told the officer the robber's location. The victim stated that after the officer arrested the robber, he "met up" with the officer and told him, "[T]hat's the guy." About three or four months later, the police department gave the victim a check for $370. The victim identified the appellant in court as the person who robbed him.

On cross-examination, the victim testified that he did not remember what lights were on outside the bank but that the area was bright. The appellant was wearing a black baseball cap and a black shirt at the time of the robbery, but the victim could not remember the color of the appellant's gun. The victim said he did not remember telling the police that the gun was "dark colored." He also did not remember testifying at the appellant's preliminary hearing that the appellant was holding the gun in the appellant's left hand. When the appellant first approached the victim, the appellant was standing to the victim's left. The appellant reached into the victim's left pocket, and the victim told the appellant that his wallet was in his right pocket. The appellant walked around to the victim's right side, reached into the victim's right pocket, and removed the victim's wallet. The victim said that he did not remember if the appellant reached into his front or back pocket but that he usually kept his wallet in his back pocket. He acknowledged that five minutes was a long time for the robbery but said, "That's how much time I thought it was."

The victim testified that after the robbery, he got into his vehicle, pulled out of the bank parking lot, and saw the appellant walking on Lamar Avenue. He followed the appellant and telephoned 911. He said that when the appellant saw him following, the appellant pointed the gun at him as if the appellant was going to shoot him. The victim did not see the appellant holding any money. The appellant went into the vacant lot, and the victim parked in a Krystal parking lot. He said that the appellant reappeared and that he saw the appellant for "a little while" until the appellant disappeared again. The appellant reappeared in another parking lot. The victim acknowledged that he testified at the

-2-

appellant's preliminary hearing and that defense counsel asked at the hearing if he had ever seen the appellant before September 30. The victim acknowledged that he answered, "'[I]t looked like I had seen him from work or school.'" The victim said at trial that the appellant's face was "real familiar with me."

Officer William Anderson of the Memphis Police Department (MPD) testified that he responded to the robbery and arrived in the area within one to three minutes. Dispatch had described the suspect as an African American male, wearing all black clothing, and armed with a small caliber handgun. As Officer Anderson was driving west on Lamar Avenue, he saw a man matching the robber's description near a Checker's restaurant at Knight Arnold Road. He said that he lost sight of the man and that the man "must have went behind the building." By the time Officer Anderson turned his patrol car around, he heard another officer say over the police radio, "I got one detained." Officer Anderson drove to the officer's location and saw the man he had seen walking on Lamar Avenue sitting in the back of the officer's patrol car. Officer Anderson said the victim arrived and told him, "'[T]his is the guy, this is the guy that just robbed me.'" The suspect did not have any money or a weapon on his person, so Officer Anderson returned to the "general area" where he had lost sight of the suspect and found cash "spread out" on the ground and a handgun in a small black plastic bag. The handle of the gun was sticking out of the bag. Officer Anderson identified the appellant in court as the suspect officers arrested on September 30, 2010.

On cross-examination, Officer Anderson testified that he was driving twenty to thirty miles per hour when he first saw the appellant walking on Lamar Avenue and that he could not determine if the appellant was carrying anything. Defense counsel asked him, "Now, how did you know that this person you saw in the car was the same person you saw on Lamar?" Officer Anderson replied, "Height wise, same exact clothing. As far as I could tell he was the same exact person I saw. I saw him long enough to have a pretty good idea that that was the same person."

Officer Tim Monistere of the MPD's Crime Scene Unit testified that on the night of September 30, 2010, he responded to the robbery and went to the Checker's restaurant on Lamar Avenue. Officer Anderson showed him a grassy area between the parking lot and the building, and Officer Monistere saw cash spread out on the ground and a black plastic bag. He collected $377 and the bag, which contained a Ruger .22 caliber revolver. Six live rounds were in the gun. On cross-examination, Officer Monistere testified that he did not remember seeing the gun's handle sticking out of the bag.

At the conclusion of Officer Monistere's testimony, the State rested its case, and the defense did not present any proof. The record reflects that during jury deliberations, the jury sent the following questions to the trial court:

Can we get a transcript from the preliminary hearing; can we get the arrest ticket with the narrative; can we know why no fingerprints were taken or why we were not shown a surveillance video from the bank or Checker's; can we know why the arresting officer did not testify?

The trial court informed the jury, "Respectfully, no. The proof in the case is closed and we cannot provide you any other information. Okay? Sorry." The jury convicted the appellant as charged of aggravated robbery, a Class B felony.

## II. Analysis

The appellant contends that the evidence is insufficient to support the conviction due to the victim's "faulty" identification of him as the robber. The appellant claims that the victim's identification of him is unreliable because the victim did not identify any facial features of the robber or describe the robber's "markings," height, weight, or size. The appellant also claims that the victim's identification is unreliable because the victim testified that the appellant's face was familiar. The appellant contends that the jury's questions demonstrate that it questioned the evidence. The State argues that the evidence is sufficient. We agree with the State.

"When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012); see also State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. See Wagner, 382 S.W.3d at 297; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The jury, as the finder of fact, is responsible for assessing the credibility of the witnesses, deciding the weight to accord their testimony, and reconciling any conflicts in the proof. See Wagner, 382 S.W.3d at 297; State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). On appeal, this court cannot re-weigh the evidence or draw any inferences from it other than those drawn by the jury. See Wagner, 382 S.W.3d at 297; Cabbage, 571 S.W.2d at 835. A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of both. "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" Dorantes, 331 S.W.3d at 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

Aggravated robbery as charged in this case is defined as robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A theft of property occurs when someone, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103.

Taken in the light most favorable to the State, the evidence shows that on the night of September 30, 2010, a man approached the victim as the victim came out of the bank. The man demanded money from the victim, pointed a gun at him, reached into his pocket, and removed his wallet containing $370. The man took the money out of the wallet, gave the wallet back to the victim, and began walking on Lamar Avenue toward Knight Arnold Road. Shortly thereafter, the victim spotted the robber, followed him, and telephoned 911. Officer Anderson arrived within a few minutes and saw a man matching the robber's description walking on Lamar Avenue toward Knight Arnold Road. Officer Anderson lost sight of the man near the Checker's restaurant. However, another officer arrested the man, who turned out to be the appellant. Officer Anderson found $377 and a handgun near the Checker's, and the victim arrived at the scene and identified the appellant as the robber. The victim also identified the appellant in court as the robber, and Officer Anderson identified the appellant in court as the man he saw walking along Lamar Avenue. Although the appellant claims that the victim's identification of him is unreliable, the jury, as was its prerogative, obviously accredited the testimony of the State's witnesses and resolved any discrepancies in favor of the State. Therefore, we conclude that the evidence is sufficient to support the conviction.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE